1  Richard C. Dalton
2  Texas Bar No. 24033539
   Louisiana Bar No. 23017
3  California Bar No. 268598
   P.O. Box 358
4  Carencro, Louisiana 70520-0358
5  rick@rickdalton.law
   Tel. (337) 371-0375
6
7  ATTORNEY FOR PLAINTIFFS

8              **UNITED STATES DISTRICT COURT FOR THE**
                   **EASTERN DISTRICT OF CALIFORNIA**
9                        **FRESNO DIVISION**
10

11 **RICK ALLEN JONES AND**          §        **CIVIL ACTION NO:**
   **ANDREA JONES**                  §
12                                    §
                                      §
        *Plaintiffs*                  §
13 **v.**                             §
                                      §
14 **HEARTLAND RECREATIONAL**         §
   **VEHICLES, LLC**                  §
15 **CAMPING WORLD RV SALES, LLC**    §
16 **AND**                            §
   **HUNTINGTON NATIONAL BANK**       §
17                                    §
                                      §
18       *Defendants*                 §        **JURY TRIAL REQUESTED**

19                           **COMPLAINT**

20                        **I.    Parties**

21

22      1.      Plaintiffs, RICK ALLEN JONES and ANDREA JONES, are individuals that are now

23 and have been at all times citizens of the state of California.

24      2.      Defendant, HEARTLAND RECREATIONAL VEHICLES, LLC, hereinafter

25 "HEARTLAND", is an Indiana limited liability company and a citizen of the State of Indiana.

26 HEARTLAND is a non-governmental party and is wholly owned by Thor Industries, Inc. which is

27 a publicly held company and owns ten percent (10%) or more of the named party's stock.

28

                              -1-

1        HEARTLAND's agent for service of process is C T Corporation System, 334 North

2

3   Senate Avenue, Indianapolis, Indiana 46204.

4        3.     Defendant, CAMPING WORLD RV SALES, LLC, hereinafter "CAMPING

5   WORLD," is a Minnesota limited liability company and a citizen of the State of Minnesota.

6        CAMPING WORLD is wholly owned by FreedomRoads Operations Company, LLC.

7   FreedomRoads Operations Company, LLC is a Minnesota limited liability company and a citizen

8

9   of the State of Minnesota and is wholly owned by FreedomRoads, LLC.  FreedomRoads, LLC is a

10  Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned

11  by FreedomRoads Intermediate Holdco, LLC.  FreedomRoads Intermediate Holdco, LLC is a

12  Minnesota limited liability company and a citizen of the State of Minnesota and is wholly owned

13
    by ITM Holding Company #2, LLC.   ITM Holding Company #2, LLC is a Minnesota limited
14
    liability company and a citizen of the State of Minnesota and is wholly owned by ITM Holding
15
    Company, LLC.  ITM Holding Company, LLC is a Minnesota limited liability company and a
16

17  citizen of the State of Minnesota and is wholly owned by FreedomRoads Holding Company, LLC.

18   FreedomRoads Holding Company, LLC is a Minnesota limited liability company and a citizen of

19
    the State of Minnesota and is wholly owned by CWGS Group, LLC.
20

21       CWGS Group, LLC is a Delaware limited liability company and a citizen of the State

22  of Delaware and is wholly owned by CWGS Enterprises, LLC.  CWGS Enterprises, LLC is a

23
    Delaware limited liability company and a citizen of the State of Delaware and is owned by: (a)
24
    CWGS Holding, LLC; (b) CVRV Acquisition, LLC; © CWH BR, LLC; (d) Camping World
25
    Holdings, Inc.; (e) and certain individuals, none of which are known citizens of the State of Texas
26

27  by the Plaintiff.  CWGS Holding, LLC is a Delaware limited liability company and a citizen of the

28

State of Delaware and is wholly owned by ML Acquisition Company, LLC.  ML Acquisition Company, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by : (I) AGI Holding Corp.; and (ii) ML RV Group, LLC.  AGI Holding Corp. is a Delaware limited liability company and a citizen of the State of Delaware and is not a publicly held corporation and no publicly held corporation owns 10 percent or more of its stock.

ML RV Group, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by (1) Marcus Lemon who is a citizen of the State of Illinois;  (2) CVRV Acquisition is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by Crestview Partners II GP, LP.  Crestview Partners II GP, LP is a Delaware limited liability partnership and a citizen of the State of Delaware. The identities of the limited partners of Crestview Partners II, LP are confidential; however, none of the limited partners are known citizens of the State of Texas by the Plaintiff;  (3) CWH BR, LLC is a Delaware limited liability company and a citizen of the State of Delaware and is wholly owned by Camping World Holdings, Inc.  Camping World Holdings, Inc. is a publicly traded Delaware corporation with its principal place of business in Lincolnshire, Illinois.  All publicly held companies, if any, that own ten percent (10%) or more of the named party's stock: Camping World RV Sales, LLC is not a publicly held corporation; and (4) Camping World Holdings, Inc. is a Delaware publicly traded corporation, and owns greater than 10 percent of the membership interest in CWGS Enterprises, LLC, which is an indirect parent company of Camping World RV Sales, LLC.

CAMPING WORLD is authorized to do and doing business in the State of Texas whose agent for service of process is CT Corporation System, 334 North Senate Avenue, Indianapolis, Indiana 46204.

4.      Defendant, HUNTINGTON NATIONAL BANK, is an Ohio bank and citizen of Ohio and authorized to do and doing business in the State of Louisiana whose agent for service of process is Huntington National Bank, 17 South High Street Columbus, Ohio 43216.

## II.   Jurisdiction

5.      This court has jurisdiction over this lawsuit because the suit arises under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d).

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiffs's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

## III.   Venue

6.      Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant, CAMPING WORLD, is located in Kern County, California and subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

## IV.   Conditions Precedent

7.      All conditions precedents have been performed or have occurred.

## V.   Facts

### A.   The Transaction

8.      On or about September 30, 2021, Plaintiffs purchased a new 2021 HEARTLAND MALLARD bearing VIN: 5SFNB3026MN465035, hereinafter "MALLARD," from CAMPING WORLD.

The "MALLARD" was purchased primarily for Plaintiffs' personal use.  The sales

contract was presented to Plaintiffs at the dealership and was executed at the dealership.

9.      The sales price of the MALLARD was $41,633.11.  Civil or Puniti6ve penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law.   See *Hughes v. Segal Enterprises, Inc.,* **627 F. Supp. 1231, 1238 (W.D. Ark. 1986);** *Chariton Vet Supply, Inc. v. Moberly Motors Co.,* **2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

10.      The contract of sale was assigned to Defendant, HUNTINGTON NATIONAL BANK.  The contract which was assigned contained the following provision:

> **"NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."**

### B.      Implied Warranties

11.      As a result of the sale of the MALLARD by Defendants to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the MALLARD would pass without objection in the trade under the contract description, and that the MALLARD was fit for the ordinary purpose for which such motor vehicles are purchased.

12.      Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C.      Express Warranties

13.      In addition to the implied warranties that arose in the transaction, certain

-5-

1
2
3
4
5
representations and express warranties were made, including, that any malfunction in the

MALLARD, occurring during a specified warranty period resulting from defects in material or

workmanship would be repaired, and that repair work on the MALLARD had, in fact, repaired the

defects.

6
7
8
9
10
14.    Plaintiffs' purchase of the MALLARD was  accompanied by express warranties

offered by the Defendants, HEARTLAND and CAMPING WORLD, and extending to Plaintiffs.

These warranties were part of the basis of the bargain of Plaintiffs's contract for purchase of the

MALLARD.

11
12
13
14
15
16
17
18
19
15.    The basic warranty covered any repairs or replacements needed during the warranty

period due to defects in factory materials or workmanship.  Any required adjustments would also

be made during the basic coverage period.  All warranty repairs and adjustments, including parts and

labor, were to be made at no charge.  Additional warranties were set forth in the HEARTLAND's

warranty booklet and owners manual.  Also, the Defendant, HEARTLAND, continued to agree to

extended its express warranty with the Plaintiffs to cover defects that were discovered and tendered

for repairs during the original factory warranty.

20
### D.    Actionable Conduct

21
22
23
24
16.    In fact, when delivered, the MALLARD was defective in materials and workmanship,

with such defects being discovered within the warranty periods.  Many defective conditions have

occurred since purchase, including, but not limited to, the following in the Plaintiffs's own words:

25
26
27
28
**"On September 30, 2021, we went to purchase a trailer from Camping World. Mr. Steve  Kane was our Salesman. We found a 2021 Heartland Mallard that we liked and decided  to purchase it. Although during the walk through, we noticed several things not quite right,  i.e., shower frame fell on Andrea's head, several cosmetic features - rip in privacy curtain,  whole in the underside**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

of master bedroom mattress, trim that was away from the wall, ceiling molding not right, vent cover lying on floor, etc.  Also, the water heater did not  work.

We were brought inside the facility to start the paperwork and Mr. Eric Burrell, General  Manager, came in and introduced himself.  We started going through everything and  Andrea was having second thoughts on the purchase with everything we noticed that was  wrong.  Mr. Burrell made the statement that they already "ran everything through the  DMV" like that was supposed to change our mind. We eventually agreed to keep going  with the paperwork. Also, Mr. Burrell made the following statement several times, "you  need to drive the trailer off the lot so you can take possession of it."  Mr. Burrell then  offered to provide us with a $500 gift card.  We were assured that the things which were  listed as deficient would be taken care of.
As you can see by the timeline, we did not take the trailer home with us the day it was  purchased.  We drove it off the lot, around the corner and back into the parking lot of  Camping World.

We went camping several times since purchasing the trailer, but each time we had to pick  up the trailer from  the  Camping World  Service  Department  just  to  return   it   for current/additional repairs.

Finally, in September 2022, we got tired of dealing with Camping World and the alleged  repairs, so we just put the trailer in our storage unit (which we had not used until then).  As a side note, we pre-pay an entire year for our storage.  It is over $1,000 for the year.

Just recently, we went camping the weekend of February 24-26, 2023. Once again, there  were issues with the hot water heater, refrigerator, the slide out and also new electrical  issues.  It has been at Camping World since March 1, 2023.  We were told by Andrew Moran, our service rep, that he didn't know what would be covered under our warranty.  He made a comment that since the one year warranty has expired, the slide out likely  would not be covered.

March 15, 2023, 2:20 p.m., received a telephone call from Andrew Moran.  Mr. Moran  said the warranty company has agreed to fix the slide out rubbers, replace the freezer  door and molding (molding already replaced before) to the refrigerator

1

2

3

**and fix a "water valve" that was leaking. Mr. Moran made the statement that we are saving around $1,400 for these repairs. Mr. Moran also advised we will have to pay for incidental costs, such as freight and some other fees (???? not sure why)!**

4

5

6

7

8

9

**Rick/Andrea Jones-2021 Heartland Mallard M251BH We should not have to be taking a 2021 trailer (which was brand new when we bought it) back to Camping World with existing/new issues after every trip we decide to take. We are paying $40,000+ for a trailer that has to be fixed every time we use it - whether it be mechanical or cosmetic. We were told by Andrew Moran that the cosmetic issues which now arise will not be covered under our warranty.**

10

**A detailed timeline is attached as Exhibit A."**

11        17.    Since purchase, Plaintiffs have returned his MALLARD to the Defendants and its

12

13

14
authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged

period during which Defendants were given the opportunity to repair the MALLARD, the more

15   significant and dangerous defects were not repaired. Defendants failed to repair the subject vehicle

16   so as to bring it into conformity with the warranties set forth herein. From the date of its purchase,

17

18
the MALLARD, continues to this day to exhibit some or all of the non-conformities and/or defects

described herein.

19

20        18.    The defects experienced by Plaintiffs with the MALLARD substantially impaired its

21   use, value and safety.

22        19.    Plaintiffs directly notified the Defendants of the defective conditions of the

23

24
MALLARD on numerous occasions. Plaintiffs notified Defendants, HEARTLAND and CAMPING

25   WORLD, that they wanted a rescission of the sale of the MALLARD but the Defendants have failed

26   and refused to buy back Plaintiffs' defective MALLARD.

27

28

## VI.    Causes of Action

**COUNT 1:  VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT, CIVIL CODE SECTION 1790 ET SEQ.**

20.    Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

21.    The MALLARD is a consumer good as defined under the Song-Beverly Consumer Warranty Act.

22.    Plaintiffs are "purchasers" of consumer goods as defined under the Song-Beverly Consumer Warranty Act.

23.    Defendant, HEARTLAND, is a "manufacturer" and "distributor" as defined under the Song-Beverly Consumer Warranty Act.

24.    The sale of the vehicle to Plaintiffs was accompanied by an express written warranty.

25.    The serious non-conformities have manifested themselves within the applicable express warranty period. The non-conformities substantially impair the use, value and or safety of the vehicle and or can cause serious bodily injury or death.

26.    Plaintiffs brought their MALLARD to CAMPING WORLD, an authorized repair facility, for repairs on numerous occasions in attempts to have the existing express warranties satisfied.

27.    Defendants have not repaired the nonconformities after a reasonable number of attempts and, as such, have failed to comply with and have breached all applicable warranty requirements.

28.    Further, the sale of the MALLARD to Plaintiffs was accompanied by implied warranties that the vehicle was merchantable and fit for a particular use.

29.     Defendants have breached the implied warranties of merchantability and fitness for a particular use because the vehicle when sold would not pass without objection in the trade.

30.     Despite their breach of the express and implied warranties, Defendants have refused Plaintiffs' demand for a refund or replacement.

31.     By failure of Defendants to remedy the defects as alleged above, or to issue a refund or replacement, Defendants are in breach of their obligations under the Song-Beverly Consumer Warranty Act.

32.     Defendants' continuing breach of their obligations as set forth herein is willful pursuant to the Song-Beverly Consumer Warranty Act and as such, Defendants and each of them are liable to Plaintiffs for civil penalties in an amount as set forth below.

33.     Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevails.  As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:    VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

34.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

35.     Plaintiffs are "consumers" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

36.     Defendants, HEARTLAND and CAMPING WORLD, are "suppliers" and

"warrantors" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

37.     The MALLARD is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

38.     The express warranties more fully described herein above pertaining to the MALLARD, is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

39.     The actions of the Defendants as herein above described, in failing to tender the MALLARD to Plaintiffs free of defects and/or refusing to repair and/or replace the defective MALLARD tendered to Plaintiffs constitute a breach of the written and implied warranties covering the MALLARD and hence a violation of the Magnuson-Moss Warranty Act.

40.     Plaintiffs have performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

41.     As a direct and proximate result of the acts and omissions of Defendants and each of them as set forth herein above, Plaintiffs have been damaged herein above in an amount in excess of $300,000.00 according to proof at trial.

41.     Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in

1   connection therewith.

2                    **COUNT 3: LENDER LIABILITY**

3

4   42.    Plaintiffs re-allege and incorporate by reference herein each and every allegation set

5   forth in the preceding paragraphs.

6   43.    Plaintiffs are indebted to HUNTINGTON NATIONAL BANK as a result of their

7   purchase of the MALLARD.  Plaintiffs are entitled to assert all claims and defenses stated above

8   against HUNTINGTON NATIONAL BANK as a defense to the debt.

9

10              **COUNT 4:    BREACH OF EXPRESS WARRANTIES**

11  44.    Plaintiffs re-allege and incorporate by reference as though fully set forth herein each

12  and every allegation contained in the preceding paragraphs.

13  45.    Th Defendants' advertisements and statements in written promotional and other

14

15  materials contained broad claims amounting to a warranty that Plaintiffs' MALLARD or those

16  similarly situated were free from inherent risk of failure or latent defects.  In addition, the

17  Defendants issued an expressed written warranty which covered the MALLARD and warranted that

18  the MALLARD, was free of defects in materials and work quality at the time of delivery.

19

20  46.    As alleged above, the Defendants breached its warranties by offering for sale and

21  selling as safe to Plaintiffs a MALLARD that was latently defective, unsafe, and likely to cause

22  economic loss to Plaintiffs.

23  47.    In breach of the foregoing warranties, the Defendants have failed to correct said

24

25  defects.

26  48.    The damages Plaintiffs have suffered are a direct and proximate result of Defendants'

27  actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of

28

repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### COUNT 5:   BREACH OF IMPLIED WARRANTIES

49.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

50.     The Defendants impliedly warranted that Plaintiffs' MALLARD which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

51.     Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendants is unreasonable and unconscionable and void under the principles of estoppel, because Defendants knew the defects existed and might not be discovered, if at all, until the MALLARD, had been driven for a period longer than the period of the written warranty, and Defendants willfully withheld information about the defects from Plaintiffs.

52.     Because of the defects, Plaintiffs' MALLARD is unsafe and unfit for use and has caused economic loss to the Plaintiffs.  Therefore, the Defendants breached the implied warranty of merchantability.

53.     The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### COUNT 6:   NEGLIGENCE AND NEGLIGENT MISREPRESENTATION

54.     Plaintiffs re-allege and incorporate by reference herein each and every allegation set

1  forth in the preceding paragraphs.

2
3  55.    The Defendants had a duty to Plaintiffs to provide a product reasonably safe in design
4  and manufacture, warn of dangerous defects, disclose adverse material facts when making
5  representations of fact to Plaintiffs and correct products which are defective.

6  56.    The Defendants breached their duty of reasonably care and duty to disclose material
7  adverse facts to Plaintiffs by the following acts and omissions:

8
9       a.    Failure to design and manufacture a  MALLARD  that did not harbor the
             defects alleged herein;

10
11      b.    Failure to notify Plaintiffs of the dangerous and defective condition of the
             MALLARD when Defendants knew or should have known of the dangerous
12            and defective condition;

13      c.    Failure to fulfill its duty to disclose the material adverse facts as set forth
             above and otherwise failing to exercise due care under the circumstances;
14            and

15
16      d.    Failure to repair the MALLARD in accordance with the express and implied
             warranties.

17  57.    The damages Plaintiffs have suffered are a direct and proximate result of Defendants'
18  actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of
19
20  repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages;
21  loss of use; damages; and attorney fees.

22              **COUNT 7:   BREACH OF CONTRACT**

23
24  58.    Plaintiffs re-allege and incorporate s herein by reference each and every allegation
25  set forth in the preceding paragraphs.

26  59.    Plaintiffs would show that the actions and/or omissions of Defendants described
27  herein above constitute breach of the sales contract, which proximately caused the direct and
28

consequential damages to Plaintiffs described herein below, and for which Plaintiffs hereby sues.

60.     The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 8:     NEGLIGENT REPAIR**

61.     Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

62.     On numerous occasions, Plaintiffs delivered the MALLARD to Defendants for repairs of the defective conditions covered under the express and implied warranties set forth hereinabove.

63.     On each occasion that Plaintiffs returned the MALLARD for repairs, Plaintiffs are informed and believe, and thereupon allege, that Defendants attempted repairs of the MALLARD pursuant to their obligations under the express and implied warranties. Defendants owed a duty of care to Plaintiffs to perform repairs on the MALLARD in a good and workmanlike manner within a reasonable time.  These Defendants breached this duty.

64.     Defendants' attempted repairs of Plaintiffs' MALLARD were done so negligently, carelessly, and recklessly as to substantially impair the MALLARD 's use, value, and safety in its operation and use.  At no repair attempt was Plaintiffs' MALLARD fully and completely repaired by Defendants, nor were many of the conditions of which Plaintiffs complained fixed or significantly improved by Defendants' attempts at repair.  Nonetheless, each time Plaintiffs picked up the vehicle after Defendants' repair attempts, Defendants represented to Plaintiffs that the repairs

were complete, and Plaintiffs relied thereon.

65.     As a direct and proximate result of Defendants' negligent failure to repair the MALLARD  within a reasonable time or within a reasonable number of attempts, Plaintiffs were forced to drive a defective and dangerous MALLARD  in conducting their daily activities.  As a further direct and proximate result of Defendants' failure to repair the MALLARD  in a timely and workmanlike fashion, Plaintiffs were forced repeatedly to take the MALLARD  in for further repair attempts and to leave the MALLARD  for long periods of time at great inconvenience to themselves, and Plaintiffs sustained actual damages.

66.     The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; attorney fees and damages to Plaintiffs's health and well-being in the form of emotional distress.

## VII.     Economic and Actual Damages

67.     Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

        a..     Out of pocket expenses, including but not limited to the money paid towards the note securing the vehicle;

        b.     Loss of use;

        c.     Loss of the "benefit of the bargain";

        d.     Diminished or reduced market value; and

        e.     Costs of repairs.

### VIII.    Multiple Damages

68.    The Defendants' conduct in violation of the DTPA was committed knowingly, as that term is defined in that Defendants had actual awareness of the *falsity, deception, or unfairness* of such acts, practices, and/or omissions.

69.    Plaintiffs further shows that such acts, practices, and/or omissions were committed "intentionally" in that Defendants specifically intended that Plaintiffs act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

70.    Therefore, Plaintiffs are entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code in an amount not to exceed three times the amount of their economic damages.

### IX.    Request for Rescission

71.    Plaintiffs seek the remedy of rescission of the sales contract which is requested in the following paragraph.

72.    Plaintiffs revoke their acceptance of the MALLARD for the reason that its defects substantially impair its value to Plaintiffs and acceptance was based on Plaintiffs' reasonable reliance on the false representations and warranties of Defendants that the defects in MALLARD would be repaired.  Accordingly, Plaintiffs seek a cancellation of the purchase transaction and an order of the court restoring to them the money obtained by Defendants as a result of the false representations and breaches of warranty set forth above.  Plaintiffs also seeks cancellation of the debt and now offers to return the MALLARD to Defendants.

### X.    Attorney Fees and Costs

73.    Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the

suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## XI.   Prayer

74.   For these reasons, Plaintiffs pray for judgment against the Defendants for the following:

    a.   For general, special and actual damages according to proof at trial;

    b.   Rescinding the sale of the 2021 HEARTLAND MALLARD bearing VIN: 5SFNB3026MN465035 and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c.   For incidental and consequential damages according to proof at trial;

    d.   Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

    e.   Any diminution in value of the MALLARD, attributable to the defects;

    f.   Past and future economic losses;

    g.   Prejudgment and post-judgment interest;

    h.   Damages for loss of use of vehicle;

    i.   Civil Penalties and/or Punitive damages;

    j.   Damages for mental anguish;

    k.   Attorney fees;

    l.   Costs of suit, expert fees and litigation expenses; and

1

m     All other relief this Honorable Court deems appropriate.

2

## XII.    Demand for Jury Trial

3

4

75.    Plaintiffs hereby demands a trial by jury to the extent authorized by law.

5

6

RESPECTFULLY SUBMITTED:

7

8

BY: /s/ *Richard C. Dalton*

Richard C. Dalton

9

Texas Bar No. 24033539

Louisiana Bar No. 23017

10

California Bar No. 268598

P.O. Box 358

11

Carencro, Louisiana 70520-0358

12

rick@rickdalton.law

Tel. (337) 371-0375

13

14

ATTORNEY FOR PLAINTIFFS

15

16

17

18

19

20

21

22

23

24

25

26

27

28